UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

---

Guillermo Perez Rosales, Belkis Vanessa Banegas Lainez, and Javier Fernandez-Martinez, Individually on behalf of themselves and all others similarly situated,

          Plaintiffs,

v.

ROCK SPRING CONTRACTING LLC, EAGLE HOME IMPROVEMENTS LLC, BROTHERS RC CONTRACTORS LLC, and COWBOYS CONTRACTORS LLC,

          Defendants.

Case No.  3:23-cv-407

---

**MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR SETTLEMENT APPROVAL**

---

Subject to Court approval, Plaintiffs Guillermo Perez Rosales ("Rosales"), Belkis Vanessa Banegas Lainez ("Lainez"), and Javier Fernandez-Martinez ("Fernandez") ("Named Plaintiffs"), individually and on behalf of a collective they seek to represent (together the "Settlement Collective"), and Rock Spring Contracting LLC ("Rock Spring") and Brothers RC Contractors LLC ("Brothers") ("Defendants") (collectively the "Parties"), have settled this wage and hour collective action for an amount up to $371,360.00.  The settlement satisfies all criteria for approval of a Fair Labor Standards Act ("FLSA") collective action settlement because it is a fair and reasonable resolution of a bona fide dispute and is the result of arm's-length settlement negotiations conducted by counsel well-versed in wage and hour law.

For the reasons set forth below, the Parties respectfully request that the Court enter an order

1

approving the $371,360.00 settlement detailed in the Settlement Agreement and Release ("Settlement Agreement"). The Parties have structured the Settlement Agreement and settlement process as an opt-in FLSA collective settlement, as they believe that to be the most efficient vehicle for a speedy and efficient resolution of this matter.[1] For the Court's convenience, the Settlement Agreement is attached as Exhibit A.

## PROCEDURAL BACKGROUND AND SETTLEMENT NEGOTIATIONS

### I. Factual Allegations

Named Plaintiffs are former drywall mechanics, drywall finishers and associated laborers, ("laborers") who worked for Defendants Eagle Home Improvements LLC and Cowboys Contractors LLC, subcontractors of Defendant Brothers RC Contractors LLC in the Commonwealth of Virginia. Defendant Rock Spring Contracting LLC is a limited liability company with its principal office located in Kensington, Maryland. Defendant Brothers RC Contractors LLC is a limited liability company with its principal office located in Stafford County, Virginia and is a subcontractor of Rock Spring.

Named Plaintiffs allege that Defendants violated the FLSA and Virginia state law by not paying laborers overtime wages. As a result, Named Plaintiffs claim that from the three years preceding the filing of the Complaint, laborers were not properly paid their overtime for all hours worked over forty in a week. Furthermore, Named Plaintiffs claim that they were incorrectly misclassified as Independent Contractors. Defendants denied, and continue to deny, any and all allegations of violation(s) of law or other wrongdoing.

### II. Overview of Investigation, Litigation, and Settlement Negotiations

Before filing this lawsuit, Plaintiffs' counsel conducted a thorough investigation into the

---

[1] At the time of settlement, Plaintiffs had not moved for certification of any claims under Federal Rule of Civil Procedure 23.

merits of the potential claims and defenses. Plaintiffs' counsel focused their investigation and legal research on the underlying merits of the potential collective/class action members' claims, the damages to which they may be entitled, and the likelihood of collective and/or class action certification. Plaintiffs' counsel obtained and reviewed documents from the Named Plaintiffs, including pay stubs, and tax forms. Plaintiffs' counsel also conducted in-depth interviews with the Plaintiffs.

On June 23, 2023, Named Plaintiffs filed suit alleging violations of the FLSA and Virginia Code Sections 40.1-28.7:7 and 40.1-29.2. Named Plaintiffs filed their Amended Complaint to correct an incorrectly named Defendant on July 3, 2023. Named Plaintiffs filed the FLSA count as a collective and the Virginia counts as classes. Shortly after the Complaint was filed, counsel for Defendants contacted Plaintiffs' counsel and indicated that Defendants denied the Complaint's allegations. Nevertheless, the parties began shortly thereafter to discuss whether a negotiated resolution was possible and what data was needed to achieve the same.

The Parties subsequently engaged in informal discovery with counsel for Defendant Brothers providing Plaintiffs' counsel with data for all 188 putative class and collective members (i.e., all individuals who worked as laborers from August 2022 to August 2023, when the project in question was ongoing). The data included *inter alia* dates worked, clock in and clock out times, overtime hours and rate of pay. After receipt of this information, Plaintiffs' counsel worked to hone a model for damages based on said data and on estimates provided in consultation with the Plaintiffs. Plaintiffs and Defendants negotiated in earnest and the Parties subsequently entered into the Settlement Agreement which is now presented for approval.

## SUMMARY OF THE SETTLEMENT TERMS

### I.     The Settlement Fund

Defendant Brothers has agreed to pay a maximum amount of $371,360.00 to settle the claims on behalf of Defendants in this action. That amount will be allocated as follows: (i) settlement payments to eligible current and former laborers who wish to join the settlement up to $271,360.00 (inclusive of service awards to the Named Plaintiffs in the amount of $1,500.00 each), and (ii) Plaintiffs' counsel's fees and expenses of $100,000.00.  The Settlement Fund does not include the costs of settlement administration.[2]

### II.    Eligible Employees

The Parties have agreed and confirmed that there are 188 former and current laborers eligible to participate in the settlement.  Schedule B of the Settlement Agreement provides that aside from the service awards, all Plaintiffs' individual allocations are otherwise calculated on a *pro rata* basis based upon each Plaintiffs' "best day" damages during the relevant time period.

### III.   Settlement Notice and Check Distribution Process

Within 10 business days after the settlement is approved, Plaintiffs' counsel or the Settlement Administrator will mail and text message to the Settlement Collective, the Settlement Agreement along with each individual's personalized Schedule A ("Release") for execution and the Settlement Notice.  Members of the Settlement Collective will then have 45 days to accept their individual allocation and release their claims by signing their Release.  Within 15 business days after the 45-day notice period has ended, Defendants will disburse the Settlement Fund of up to $271,360.00, consistent with the Settlement Agreement and the signed Releases.  Five days after

---

[2] The "Settlement Administrator" will be an agreed upon third-party entity responsible for administering the settlement consistent with this agreement. The Settlement Administrator will translate all necessary documents into Spanish and provide both Spanish and English forms to all eligible persons.  Brothers will bear all costs of the Settlement Administrator and will pay the Settlement Administrator directly.

the checks are disbursed, Plaintiffs' counsel will dismiss the lawsuit, with prejudice.

### IV. Release

Only individuals who affirmatively elect to participate in the settlement will release any claims. The Release is properly tailored to only release wage and hour claims. Any individual who chooses not to sign their Release will not be a party to the settlement.

### V. Settlement Awards

As explained above, with the exception of the three individuals receiving the $1,500.00 each as Service Awards, each eligible laborer has been allocated a pro rata share of the Settlement Fund pursuant to an allocation formula based on their overtime hours worked along with a flat amount of $300 to account for any damages associated with alleged independent contractor misclassification. The average holistic pretax settlement allocation is just over $1,400.00.

### VI. Service Awards

Under the Settlement Agreement, Named Plaintiffs seek Court approval for Service Awards of $1,500.00 for each Named Plaintiff, in recognition of the services they rendered to the Settlement Collective in obtaining the benefits of the settlement. The Named Plaintiffs assisted counsel in the investigation of the Settlement Collective's claims, participated in settlement discussions, responded to points raised by Defendant, and provided vital assistance that helped Plaintiffs' counsel achieve this settlement for the benefit of the greater group.

### VII. Attorneys' Fees and Litigation Costs

Under the Settlement Agreement, subject to Court approval, Plaintiffs' counsel will receive 27% of the Gross Settlement Amount as attorneys' fees, totaling $100,000.00, inclusive of reimbursement of out-of-pocket costs.

## ARGUMENT

I. **The Settlement Meets the Requirement for Approval of an FLSA Settlement.**

Settlement of an FLSA lawsuit must be approved by the U.S. Department of Labor or a federal district court. *LaFleur v. Dollar Tree Stores, Inc.*, 189 F. Supp. 3d 588, 593 (E.D. Va. 2016) (citing *Taylor v. Progress Energy, Inc.*, 415 F.3d 364, 374 (4th Cir. 2005)). The Eastern District of Virginia takes its direction from the Eleventh Circuit and holds that an FLSA settlement should be approved if it is "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Patel v. Barot*, 15 F. Supp. 3d 648, 654 (E.D. Va. 2014) (citing *Lynn Food Stores, Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350, 1355 (11th Cir. 1982)). Furthermore, when the parties' settlement, as here, reflects "a reasonable compromise over the issues the court may approve it in order to promote the policy of encouraging settlement of litigation." *Kuntze v. Josh Enters., Inc.*, No. 2:18cv38, 2019 WL 2179220, at *1 (E.D. Va. May 20, 2019) (internal markings omitted) (citing *Lynn Food Stores*, 679 F.2d at 1354).

This settlement represents a good faith compromise of the parties' bona fide dispute of liability and damages under the FLSA. Furthermore, the proposed settlement terms are fair and reasonable, and the settlement was reached after arms-length negotiation. For these reasons and based on the foregoing, the Parties request that the Court approve the Settlement Agreement.

A. **There is a Bona Fide Dispute over FLSA Provisions.**

To merit Court approval, the settlement must resolve a bona fide dispute over FLSA provisions. *See Patel*, 15 F. Supp. 3d at 654 (citing *Lynn Food Stores*, 679 F.2d at 1355). In this action, Plaintiffs allege that they were not paid regular and overtime wages in violation of the FLSA. As the Court has noted, "[a] bona fide dispute exists when an employee makes a claim that he or she is entitled to overtime payment." *Lomascolo v. Parsons Brinckerhoff, Inc.*, No.

6

1.08cv1310, 2009 WL 3094955, at *16 (E.D. Va. Sept. 28, 2009). Furthermore, Defendants have consistently denied and continue to deny those allegations. The Settlement Agreement contains a provision expressly denying any and all liability to Plaintiffs. As such, this settlement represents a good faith compromise of the parties' bona fide dispute regarding the FLSA claims alleged in the Complaint.

### B.      The Settlement is Fair and Reasonable.

"In determining whether a settlement is fair, adequate, and reasonable there is a *strong presumption* in favor of finding a settlement fair that must be kept in mind in considering the various factors to be reviewed." *LaFleur*, 189 F. Supp. 3d at 593 (emphasis added) (internal markings and citations omitted). Those factors to be considered when assessing whether an agreement is fair and reasonable are: (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense, and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of the counsel who have represented the plaintiffs; (5) the probability of plaintiffs' success on the merits; and (6) the amount of the settlement in relation to the potential recovery. *Id.*; *see also Flinn v. FMC Corp.*, 528 F.2d 1169, 1173-74 (4th Cir. 1975). As detailed below, all of these factors point toward approval in this case.

#### 1.      The Extent of Discovery that has Taken Place.

Early on, Defendants produced relevant data for all members of the putative collective. Specifically, Defendants provided Plaintiffs' counsel with data for all members of the Settlement Collective, including the hours worked, overtime allegedly owed and rate of pay for every putative Plaintiff for August 2022 to August 2023. Plaintiffs' counsel used this data to hone a damages model which allowed the Plaintiffs to communicate their estimate of Defendants' maximum

exposure. As a result, the parties had all the information that they needed to evaluate the strength of their claims and defenses. The substantial extent of this informal discovery thus weighs in favor of approval.

### 2. The Stage of the Proceedings.

Because this lawsuit involves allegations of unpaid overtime wages under the FLSA and Virginia state law and misclassification pursuant to Virginia state law, there are myriad issues that would have required significant litigation had the matter not settled. Such issues include but are not limited to the ability of Plaintiffs to seek class action treatment for claims brought under Va. Code §§ 40.1-28.7:7 and 40.1-29.2, and the estimated damages for worker misclassification. Not to mention the time, expense, and energy that would have gone into collective and/or class certification.

If the litigation had progressed, it would have been complex, expensive, and protracted. The Parties would likely have had disputes through factual discovery and certification, and eventually challenged one another in briefing as to both liability and damages. Additional issues likely subject to protracted litigation may have included, for example, whether the Plaintiffs could prove that the Defendants were joint employers. This settlement provides significant monetary relief to the members of the Settlement Collective now, rather than risking an uncertain and unpromised resolution of contested issues. Settlement further provides the Defendants with peace of mind and certainty as to exposure resulting from Plaintiffs' allegations.

### 3. The Absence of Fraud or Collusion.

"There is a presumption that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary." *Lomascolo*, 2009 WL 3094955, at *12; *see also Kuntze*, 2019 WL 2179220, at *2. The Parties negotiated this settlement at arms-length with complete data

8

records to support the negotiated settlement. Each eligible individual will decide whether to participate in the settlement, with the full benefit of the Settlement Agreement and notice. Thus, there is no contrary evidence to outweigh the presumption that no collusion occurred between counsel.

### 4. The Experience of Plaintiffs' Counsel.

When counsel has "experience in federal court and employment litigation . . . their opinion is entitled to weight." *Gagliastre v. Captain George's Seafood Rest., LP*, No. 2:17cv379, 2019 WL 2288441, at *3 (E.D. Va. May 29, 2019); *see also Flinn*, 528 F.2d at 1173 ("While the opinion and recommendation of experienced counsel is not to be blindly followed by the trial court, such opinion should be given weight in evaluating the proposed settlement."). Plaintiffs' counsel are well-respected lawyers with a breadth of experience in the fields of employment litigation and wage and hour law. They have litigated a number of small and large overtime cases against public entities and private corporations, including, but not limited to:

> *Rogers et al. v. City of Richmond*, 3:11CV620 (E.D. Va.)
> *Carroll et al. v. County of Henrico,* 3:12CV00105 (E.D. Va.)
> *Devine, et al. v. City of Hampton*, 4:14CV81 (E.D. Va.)
> *Wright, et al. v. City of Roanoke*, 7:18CV210 (W.D. Va.)
> *Lacroix et al., v. City of Portsmouth, Virginia*, 2:13CV533 (E.D. Va.)
> *Slavin et al., v. United States Postal Service*, 3:17CV00134 (E.D. Va.)
> *Milton, et al. v. Quality Eco Technologies, LLC*, 3:20CV43 (E.D. Va.)
> *Yerby, et al. v. City of Richmond*, 3:19CV393 (E.D. Va.)
> *Clinton, et al. v. GEICO*, 2:16CV430 (E.D. Va.)
> *Mendoza, et al. v. Baird Drywall & Acoustic, Inc. et al.*, 7:19-cv-882 (W.D. Va.)
> *Broussard v. Eldor Automotive Powertrain USA* 7:19-cv-0841 (W.D. Va.)
> *Pinon v. Kalyan Plaza, LLC et al.* 7:20-cv-205 (W.D. Va.)
> *Sziber v. Dominion Energy, Inc.* 3:20-cv-117 (E.D. Va.)
> *Denson, et al. v. Elephant Insurance Services, LLC et al.* 3:22-cv-22 (E.D. Va)

Plaintiffs' counsel relied on a substantial amount of information to evaluate, negotiate and make well-informed judgments about the adequacy of the settlement. Based on Plaintiffs'

counsel's knowledge of the case and applicable law, as well as their experience in numerous similar wage and hour class actions involving construction laborers, Plaintiffs' counsel's opinion is that the settlement is fair, reasonable, and adequate and resolves a bona fide dispute. That opinion, based on extensive knowledge of employment law, is entitled to significant weight.

### 5. The Probability of Plaintiffs' Success on the Merits.

With regard to the probability of success on the merits, when evidence presented indicates that a plaintiff has "significant hurdles to overcome to affect any recovery under the FLSA," this factor "weighs heavily in favor of finding the settlement fair." *Patel*, 15 F. Supp. 3d at 656. As stated above, recovery in this matter is not guaranteed. Plaintiffs faced disputes over hours worked, the propriety of their allegations of joint employment, whether liquidated damages were appropriate, whether this action could proceed to trial on a collective action basis, and whether any of the claims asserted could proceed as a class action. Because Plaintiffs faced significant hurdles to overcome on their FLSA claims, the probability of success on the merits factor weighs in favor of approval.

### 6. The Amount of the Settlement in Relation to the Potential Recovery.

#### i. Settlement Collective Members' Recovery.

The settlement compensates individuals who choose to participate in the settlement and eliminates the possibility of a loss on a motion for collective/class certification, loss on summary judgment, loss at trial, or loss on appeal. Consequently, this settlement brings value and certainty now, as opposed to years from now. The substantial benefit that the members of the Settlement Collective will immediately receive is a significant factor weighing in favor of approval of the proposed Settlement Agreement. The relevant project lasted for only about one year, but participating individuals are eligible for an average settlement of over $1,400.00 per person, with

many receiving significantly more. This amount represents over 70% of what is believed to be the "best day" potential damages for the Putative Collective members. Therefore, the amount of the settlement in relation to the potential recovery (even at its best day potential) weighs in favor of approval.

### ii. Named Plaintiffs' Recovery.

Incentive or service awards are "intended to compensate class representatives for work done on behalf of the class [and] to make up for financial or reputational risk undertaken in bringing the action." *Berry v. Schulman*, 807 F.3d 600, 613 (4th Cir. 2015). As such, trial courts "often authorize service awards to class representatives for the time and effort they expended for the benefit of the class." *Galloway v. Williams*, No. 3:19-cv-470, 2020 WL 7482191, at *6 (E.D. Va. Dec. 18, 2020).

Here, the Named Plaintiffs request a service award of $1,500.00 each, resulting in a total service award of $4,500.00. This award is justified by the actions the Named Plaintiffs undertook in their role of representative plaintiffs. Named Plaintiffs provided factual information to Plaintiffs' counsel and continually consulted with Plaintiffs' counsel regarding litigation strategy and settlement. In light of the Named Plaintiffs' efforts, the Settlement Collective as a whole receives the benefit of a $371,360.00 Gross Settlement Amount on behalf of 188 individuals, with an average settlement payment of approximately $1,411.00. The requested service award is equivalent to approximately 1.2% of the Gross Settlement Amount. This is a reasonable percentage in light of the actions undertaken by the Named Plaintiffs in obtaining this settlement,

and thus the Service Award should be approved.

### iii. Plaintiffs' Attorneys' Fees and Costs.

The FLSA provides in part that "the court shall, in addition to any judgment awarded to plaintiff or plaintiffs, allow a reasonable attorneys' fee to be paid by defendant, and costs of the action." 29 U.S.C. § 216(b). The settlement agreed to by the Parties reflects this and rather than engaging in a time consuming and costly fight over the amount of attorneys' fees, the Parties here were able to reach a resolution of the claim for attorneys' fees and costs.

The FLSA "requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interests taints the amount the wronged employee recovers under a Settlement Agreement." *See Poulin v. General Dynamics Shared Res., Inc.*, No. 3:09-cv-00058, 2010 WL 1813497, at *2 (W.D. Va. May 5, 2010) (quoting *Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009)); *see also Davis v. BT Ams. Inc.*, No. 2:16cv206, 2017 WL 11506967, at *2-3 (E.D. Va. May 10, 2017). When assessing the fairness of attorneys' fees pursuant to a court-ordered fee award, courts generally rely on the lodestar analysis.[3] *See Lyle v. Food Lion, Inc.*, 954 F.2d 984, 988 (4th Cir. 1992); *LeFluer*, 189 F. Supp. 3d at 593. However, assessing the fairness of attorneys' fees that are part of a negotiated FLSA settlement is not identical to the traditional lodestar analysis. *Devine v. City of Hampton*, No. 4:14cv81, 2015 WL 10793424, at *3 (E.D. Va. Dec. 1, 2015). In determining the reasonableness of attorneys' fees in an FLSA settlement, courts should give some deference to the parties' voluntary agreement and use lodestar principals as a cross-check to assess fairness. *Id*. (citing *Poulin*, 2010 1813497, at *1).

Here, the Parties negotiated prior to their scheduled mediation that Plaintiffs' counsel's

---

[3] "The lodestar fee is calculated by multiplying the number of reasonable hours expended times a reasonable rate." *LeFleur*, 189 F. Supp. 3d at 593 (citing *Brodziak v. Runyon*, 145 F.3d 194, 196 (4th Cir. 1998)).

12

attorneys' fees and costs would be set at $100,000.00, 27.0% of the Settlement Fund.[4] In assessing the reasonableness of an attorneys' fees award, the Court has looked to see if that award is consistent with other cases. *See Patel*, 15 F. Supp. 3d at 657 (noting that an award equal to approximately 37.0% of the recovery was reasonable, in part because it was "consistent with other cases in the district"). To that end, the Court "has routinely approved percentage recoveries in FLSA cases approaching forty percent of the total recovery." *Winingear v. City of Norfolk*, No. 2:12cv560, 2014 WL 3500996, at *6 (E.D. Va. July 14, 2014); *see also Gagliastre*, 2019 WL 2288441, at *5 (noting that fees awarded under the "percentage of recovery" method in settlements under $100 million, as in this case, "have ranged from 15% to 40%"); *Kirkpatrick v. Cardinal Innovations Healthcare Sols.*, 352 F. Supp. 3d 499, 505 (M.D. N.C. 2018) (finding that a 33.39% award is "within the range of percentages that have been approved in other cases in th[e Fourth C]ircuit"). Indeed, the 27.0% figure in this settlement is both in line with, if not slightly less than, the precedent of the Court, and comparable to attorneys' fees awards in similar collective/class action cases alleging the non-payment of wages under the FLSA. *See e.g., id.* at *1 (awarding

---

[4] Plaintiffs' counsel's current lodestar is approximately $50,000 and is expected to continue to grow through the settlement process. Thus, the current multiplier is 2.0, but will continue to shrink. Regardless, Courts in the Fourth Circuit and throughout the country have routinely held that lodestar multipliers in this range (and significantly higher) are reasonable. *See Kruger v. Novant Health, Inc.*, No. 1:14CV208, 2016 WL 6769066, at *5 (M.D.N.C. Sept. 29, 2016) (approving fees at "3.69 times the lodestar. This multiplier is within the range of reasonableness, as courts have generally held that lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorney's fee…Courts both within this Circuit and across the country routinely approve fee awards with higher lodestar multipliers.") (internal quotes omitted)(collecting cases); *Jones v. Dominion Res. Servs., Inc.*, 601 F. Supp. 2d 756, 766 (S.D. W. Va. 2009) ("Courts have generally held that lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorneys' fee."; approving lodestar multiplier between 3.4 and 4.3); *Deloach v. Philip Morris Co.*, No. 00-1235, 2003 WL 23094907, at *11 (M.D.N.C. Dec. 19, 2003) (approving 4.45 lodestar multiplier); *Kelly v. Johns Hopkins Univ.*, No. 1:16-CV-2835-GLR, 2020 WL 434473, at *7 (D. Md. Jan. 28, 2020) (approving lodestar multiplier of 2.45); *In re Genworth Fin. Sec. Litig.*, 210 F. Supp. 3d 837, 845 (E.D. Va. 2016) (approving lodestar multiplier of 1.97 as "eminently reasonable."; "District courts within the Fourth Circuit have regularly approved attorneys' fees awards with 2–3 times lodestar multipliers.") (collecting cases) (J. Gibney); *Domonoske v. Bank of Am., N.A.*, 790 F. Supp. 2d 466, 476 (W.D. Va. 2011) (approving "lodestar multiplier of about 1.8, which is well within the normal range of lodestar multipliers.") (collecting cases); *Berry v. Schulman*, 807 F.3d 600, 617 (4th Cir. 2015) (approving multiplier of 1.99); *Witt v. CoreLogic Saferent, LLC*, No. 3:15-CV-386, 2018 WL 1560069, at *4 (E.D. Va. Mar. 22, 2018)(approving multiplier of 2.24, noting "a multiplier of 2.24 is similar to those applied in similar cases.") (collecting cases) (M.J. Novak).

38.45% ($1,230,250.00) in fees and costs on a $3,200,000 FLSA settlement); *Devine*, 2015 WL 10793424, at *3 (awarding 33.98% ($1,189,167.00) in fees and costs on a $3,500,000 FLSA settlement).  Lastly, Plaintiffs' requested fee is further warranted in light of the results obtained for the Settlement Collective. "In the Fourth Circuit, 'the most critical factor in calculating a reasonable fee award is the degree of success obtained.'" *Teague v. Bakker*, 213 F. Supp. 2d 571, 583 (W.D. N.C. 2002) (quoting *McKnight v. Cir. City Stores, Inc.*, 14 F. App'x 147, 149 (4th Cir. 2001)).  As explained above, the relief that the Settlement Collective will receive is outstanding.  Especially inasmuch as Defendants would have vigorously disputed liability, would have disputed the appropriateness of liquidated damages, and would have disputed that a collective and class actions could be maintained through trial.  Therefore, in light of the fact that the Settlement Collective will receive substantial relief here and that the attorneys' fees award is in line with the precent of comparable cases in the Eastern District of Virginia, the attorneys' fees and costs award is reasonable and should be approved.[5]

## II.   The Proposed Settlement Agreement, Release and Notice are Appropriate.

For proposed collective settlements under the FLSA, it is necessary to provide potential members of the collective "accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989); *see generally* 29 U.S.C. § 216(b).

The Settlement Agreement and notice clearly describe the terms of settlement, the relief available to the Settlement Collective, and the procedures for and consequences of participating in the settlement.  The Settlement Agreement and notice also describe the fees and costs that

---

[5] Additionally, counsel's fee is reasonable in light of the fact that Plaintiffs' counsel seek a fee well below the 40% interest agreed to in their representation agreements with the Named Plaintiffs.  The requested fee approximates "the market price for legal services." *See Sutton v. Bernard,* 504 F.3d 688, 692, 693-94 (7th Cir. 2007).

14

Plaintiffs' counsel is seeking. The documents further provide contact information for the Settlement Administrator and Plaintiffs' counsel.

## CONCLUSION

This Settlement was reached after extensive settlement negotiations. The Parties engaged in a thorough analysis of the facts and the data at issue and the Settlement Agreement provides Settlement Collective members with significant monetary relief. Because the settlement is a fair and reasonable resolution of a bona fide dispute between the Parties, it should be approved.

Date: January 22, 2024

Respectfully submitted,

By: /s/ *Zev H. Antell*
Craig J. Curwood (VSB No. 43975)
Zev H. Antell (VSB No. 74634)
Samantha Galina (VSB No. 96981)
BUTLER CURWOOD, PLC
140 Virginia Street, Suite 302
Richmond, Virginia 23219
Telephone: (804) 648-4848
Facsimile: (804) 237-0413
Email: craig@butlercurwood.com
zev@butlercurwood.com
samantha@butlercurwood.com

***Attorneys in Charge for Representative Plaintiffs and Putative Collective/Class Members***

/s/
Sharon S. Goodwyn (VSB No. 28822)
Hunton Andrews Kurth LLP
Riverfront Plaza, East Tower
951 E. Byrd St.
Richmond, VA 23219-4074
(804) 788-8200
(804) 788-8218 *facsimile*
sgoodwyn@huntonak.com

15

        Teresa D. Teare (PHV)
        Paul D. Burgin (PHV)
        SHAWE ROSENTHAL LLP
        One South Street, Suite 1800
        Baltimore, Maryland 21202
        Tel: (410) 752-1040
        Fax: (410) 752-8861
        teare@shawe.com
        pdb@shawe.com

        *Counsel for Rock Spring Contracting LLC*


        /s/ _____
        Zach Miller (VSB No. 85860)
        MCCLANAHAN POWERS PLLC
        3160 Fairview Park Drive
        Falls Church, Virginia 22042
        Tel: (703) 520-1326
        zmiller@mcplegal.com

        *Counsel for Brothers RC Contractors LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 22, 2024, I will electronically file the foregoing document with the Clerk of the Court, using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

/s/ *Zev H. Antell*
Zev H. Antell (VSB No. 74634)
Butler Curwood, PLC
140 Virginia Street, Suite 302
Richmond, Virginia 23219
Telephone: (804) 648-4848
Facsimile: (804) 237-0413
Email: zev@butlercurwood.com