IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

GUILLERMO PEREZ ROSALES,          )
*et al.*,                         )
                                  )
    Plaintiffs,  )
                                  )
    v.           )      Civil Action No. 3:23CV407 (RCY)
                                  )
ROCK SPRING CONTRACTING LLC,      )
*et al.*,                         )
                                  )
    Defendants.  )
                                  )

## MEMORANDUM OPINION

    This matter is before the Court on the parties' Joint Motion to Approve Settlement (ECF No. 36). Finding that no hearing is necessary, and that the parties' Settlement Agreement constitutes a fair and reasonable settlement of a bona fide dispute, the Court will grant the parties' Joint Motion to Approve Settlement (ECF No. 36).

## I. BACKGROUND[1]

### A. Factual Allegations

    Plaintiffs Guillermo Perez Rosales ("Rosales"), Belkis Vanessa Banegas Lainez ("Lainez"), and Javier Fernandez-Martinez ("Fernandez") ("Named Plaintiffs"), are drywall mechanics, drywall finishers, and associated laborers. Mem. Supp. Joint Mot. Settlement Approval ("Mem. Supp.") 1[2], ECF No. 37; *see* Compl. ¶¶ 1, 4, 11–20, ECF No. 1. Named

---

[1] For its recitation of the facts, the Court will frequently refer to the Memorandum of Law in Support of Joint Motion for Settlement Approval. *See* Mem. Supp. Joint Mot. Settlement Approval, ECF No. 37. The Court finds it appropriate to do so given the joint nature of the instant motion.

[2] For this and all other filings, the Court utilizes the pagination assigned by the CM/ECF system and not the pagination appearing on the original document.

Plaintiffs formerly worked in Virginia for Defendants Eagle Home Improvements LLC and Cowboys Contractors, LLC, subcontractors of Defendant Brothers RC Contractors LLC ("Brothers").   Mem. Supp. 2; Compl. ¶¶ 11–14.   Defendant Brothers is a subcontractor of Defendant Rock Spring Contracting LLC ("Rock Spring") (together, Rock Spring and Brothers will be referred to as "Defendants").  Mem. Supp. 2; *see* Compl. ¶ 16.

Named Plaintiffs allege that Defendants violated both the Fair Labor Standards Act ("FLSA") and Virginia state law by failing to pay overtime wages to their laborers.  Mem. Supp. 2.  Specifically, Named Plaintiffs claim "that from the three years preceding the filing of the Complaint, laborers were not properly paid their overtime for all hours worked over forty in a week."  *Id.*; *see* Compl. ¶¶ 40–55.  Named Plaintiffs also allege that "they were incorrectly misclassified as Independent Contractors."   Mem. Supp. 2; *see* Compl. ¶¶ 1, 63, 105, 109. Defendants denied, and continue to deny, "any and all allegations of violation(s) of law or other wrongdoing."  Mem. Supp. 2.

**B. Pre-Trial Investigation, Litigation, and Settlement Negotiations**

Before filing this lawsuit, "Plaintiffs' counsel conducted a thorough investigation into the merits of the potential claims and defenses."  *Id.* at 2–3.  Plaintiffs' counsel also "obtained and reviewed documents from the Named Plaintiffs, including pay stubs[] and tax forms."  *Id.*  Then, on June 23, 2023, Named Plaintiffs filed the instant suit "alleging violations of the FLSA and Virginia Code Sections 40.1-28.7:7 and 40.1:29.2."  *Id.* at 3.  Named Plaintiffs filed the FLSA count as a collective and the Virginia counts as putative classes.  *Id.*

Shortly after Named Plaintiffs filed the Complaint, "counsel for Defendants contacted Plaintiffs' counsel and indicated that Defendants denied the Complaint's allegations."  Mem. Supp. 3.  Nevertheless, "the parties began . . . to discuss whether a negotiated resolution was possible

and what data was needed to achieve the same." *Id.*  Subsequently, the parties engaged in extensive informal discovery.  *Id.*  The information and data exchanged concerned all 188 putative class and collective members[3] ("Plaintiffs") and "included *inter alia* dates worked, clock in and clock out times, overtime hours and rate of pay."  *Id.*  Thereafter, Plaintiffs' counsel "worked to hone a model for damages based on said data and estimates provided in consultation with Plaintiffs."  *Id.*  Plaintiffs and Defendants "negotiated in earnest," and ultimately "entered into the Settlement Agreement which is now presented for approval."  *Id.*

**C. Summary of Settlement Terms**

  The Settlement Agreement has been structured as an opt-in FLSA collective settlement.  *See* Mem. Supp. 2; Mem. Supp. Ex. A ("Settlement Agreement") 3[4], ECF No. 37-1.  There are no disputes regarding the provisions in the Settlement Agreement, and the parties have jointly moved for the Court to accept and enter the proposed Settlement Agreement.  Mem. Supp. 3.  The material details of the Settlement Agreement are as follows:

  1. <u>The Settlement Fund</u>

  Defendant Brothers has agreed to pay a maximum sum of $371,360.00 to settle the claims on behalf of Defendants in this action.  *See* Settlement Agreement 3–5.  This sum will be allocated as follows: (1) settlement payments to eligible current and former laborers who wish to join the settlement up to $271,360.00 (inclusive of service awards to the Named Plaintiffs in the amount of $1,500.00 each), and (2) Plaintiffs' counsel's fees and expenses of $100,000.00.  *See id.*  The

---

  [3] At the time of settlement, Plaintiffs had not moved for certification of any claims under Federal Rule of Civil Procedure 23.  Mem. Supp. 2 n.2.

  [4] The Court's citations to the Settlement Agreement refer to the page number(s) of the Settlement Agreement containing the cited information (e.g., "Settlement Agreement 3" indicates that the third page of the Settlement Agreement document contains the cited information).

Settlement Fund does *not* include the costs of settlement administration; instead, Defendant Brothers will bear all such costs. *See id.* at 3, 3 n.1.[5]

   2. Eligible Employees

The parties have agreed and confirmed that there are 188 former and current laborers eligible to participate in the settlement.[6] *See* Settlement Agreement 3, 16–22.  The Settlement Agreement provides that "[a]side from the service awards[,] all Plaintiffs' minimum individual allocations are otherwise calculated on a *pro rata* basis based upon each Plaintiffs' 'best day' damages during the relevant time period."  Settlement Agreement 16.  The relevant time period "began on June 23, 2020 and concludes January 9, 2024." *Id.*

   3. Settlement Notice and Check Distribution Process

Within 10 business days of the approval of this settlement, "Plaintiffs' counsel or the Settlement Administrator will cause to be text messaged and mailed copies of the [S]ettlement [A]greement, settlement notice, and individualized releases to the 18[8] eligible individuals identified by the Defendants as being members of the [']Settlement Collective.[']"  *Id.* at 3.  Members of the Settlement Collective who wish to accept the Settlement Agreement will then have forty-five (45) days from the date of mailing to do so.  *Id.* at 4.  Then, within fifteen (15) days after the forty-five-day notice period has concluded, Defendants will disburse the Settlement Fund of up to $271,360.00, consistent with the Settlement Agreement and signed releases.  *Id.*  Five

---

[5] The "Settlement Administrator" will be an agreed-upon third-party entity responsible for administering the settlement consistent with the Settlement Agreement.  Settlement Agreement 3 n.2.  The Settlement Administrator will "translate all necessary documents into Spanish and provide both Spanish and English forms to all eligible persons." *Id.*  Brothers will "bear all costs of the Settlement Administrator and will pay the Settlement Administrator directly. *Id.*

[6] The Settlement Agreement is inconsistent with regard to the number of eligible individuals.  *Compare* Settlement Agreement 3 (referring to "189 eligible individuals"), *with* Settlement Agreement 16–22 (naming the 188 eligible individuals).  The Court relies on the 188 number, as Schedule B—a list of all eligible individuals and their respective awards—indicates there are in fact 188 eligible individuals.  Settlement Agreement 16–22.

days after the settlement checks are disbursed, Plaintiffs' counsel will move to dismiss this lawsuit with prejudice. *Id.* at 5.

    4. <u>Release</u>

    Only individuals who affirmatively elect to participate in the settlement will release any claims. *See id.* at 5–6. The release form to be signed by the eligible individuals is "properly tailored to only release wage and hour claims." Mem. Supp. 5; *see* Settlement Agreement 5–6. Any individual who does not sign a release will not be a party to the settlement. *See id.*

    5. <u>Settlement Awards</u>

    Excepting the three individuals receiving $1,500.00 each as service awards, "each eligible laborer has been allocated a pro rata share of the Settlement Fund pursuant to an allocation formula based on their overtime hours worked," as well as "a flat amount of $300 to account for any damages associated with alleged independent contractor misclassification." Settlement Agreement 3–4, 23.

    6. <u>Service Awards</u>

    Named Plaintiffs seek court approval for service awards of $1,500.00 ("Service Awards") for each Named Plaintiff, "in recognition of the services they rendered to the Settlement Collective in obtaining the benefits of the settlement." Mem. Supp. 5; Settlement Agreement 3. Specifically, Named Plaintiffs "assisted counsel in the investigation of the Settlement Collective's claims, participated in settlement discussions, responded to points raised by Defendant[s], and provided vital assistance that helped Plaintiffs' counsel achieve this settlement for the benefit of the greater group." Mem. Supp. 5.

7. <u>Attorneys' Fees and Litigation Costs</u>

Under the Settlement Agreement—and subject to court approval—Plaintiffs' counsel will receive "27% of the Gross Settlement Amount as attorneys' fees, totaling $100,000.00, inclusive of reimbursement of out-of-pocket costs." *Id.*; Settlement Agreement 5.

## II. PROCEDURAL HISTORY

Named Plaintiffs filed this "collective and class action suit for unpaid overtime and misclassification" on June 23, 2023. Compl. ¶ 1. As of writing, Plaintiffs have not, however, moved for certification of any claims under Federal Rule of Civil Procedure 23. *See* Mem. Supp. 2 n.1. Instead, Plaintiffs opted to proceed as a collective. On January 16, 2024, the parties filed a Joint Notice of Settlement. ECF No. 35. And on January 22, 2024, the parties filed the instant Joint Motion to Approve Settlement and Memorandum in Support thereof. ECF Nos. 36 and 37. Accordingly, this matter is ripe for disposition.

## III. LEGAL STANDARD

All FLSA settlements must be approved by either the United States Department of Labor or a federal district court. *Taylor v. Progress Energy, Inc.*, 415 F.3d 364, 374 (4th Cir. 2005). A proposed FLSA settlement should be approved if it represents "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Patel v. Barot*, 15 F. Supp. 3d 648, 654 (E.D. Va. 2014) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982)). In determining whether a settlement is "fair, adequate, and reasonable," courts must remain cognizant that there exists a "'strong presumption in favor of finding a settlement fair.'" *Lomascolo v. Parsons Brinckerhoff, Inc.*, 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009) (quoting *Camp v. Progressive Corp.*, 2004 WL 2149079, at *5 (E.D. La. Sept. 23, 2004)); *see LaFleur v. Dollar Tree Stores, Inc.*, 189 F. Supp. 3d 588, 593 (E.D. Va. 2016).

6

# IV. DISCUSSION

The parties assert that the Settlement Agreement "represents a good faith compromise of the parties' bona fide dispute of liability and damages under the FLSA." Mem. Supp. 6. The parties further contend that "the proposed settlement terms are fair and reasonable, and [that] the settlement was reached after arms-length negotiation." *Id.* For the reasons outlined below, the Court agrees and will grant the Joint Motion for Settlement Approval.

## A. Approving the Settlement Agreement

At the outset, the Court notes that no hearing is necessary to make a determination regarding whether the Settlement Agreement passes muster under the FLSA.

"No hearing is needed to investigate the fairness" of FLSA collective action settlements. *Gorrell v. Wake Cnty.*, 2022 WL 3222003, at *4 (E.D.N.C. Aug. 9, 2022); *see Brockman v. Keystone Newport News, LLC*, 2018 WL 4956514, at *2 (E.D. Va. Oct. 12, 2018) (noting that "a hearing is not required" before a district court may approve an FLSA collective action settlement). To be sure, *class actions* brought under Federal Rule of Civil Procedure 23 require a fairness hearing "after the court preliminarily approves a proposed settlement," and before acceptance and entry of such settlement. *Gorrell*, 2022 WL 3222003, at *4; *see In re Jiffy Lube Secs. Litig.*, 927 F.2d 155, 158–59 (4th Cir. 1991). "But the statutory requirements pertaining to an FLSA collective action are 'independent of, and unrelated to, the requirements for class action[s] under Rule 23.'" *Gorrell*, 2022 WL 3222003, at *4 (quoting *Haskett v. Uber Techs., Inc.*, 780 F. App'x 25, 27 (4th Cir. 2019) (per curiam) (quoting *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1112 (9th Cir. 2018)) (rejecting collective members' arguments that Rule 23's notification requirements applied to proposed settlements of FLSA claims)).

Thus, while some courts have elected to hold fairness hearings before approving settlement agreements in FLSA collective actions, *see, e.g., Hatzey v. Divurgent, LLC*, 2018 WL 5624300, at *2 (E.D. Va. Oct. 9, 2018), *report and recommendation adopted*, 2018 WL 5621967 (E.D. Va. Oct. 30, 2019), the Court finds that no such hearing is necessary here.

**B. Bona Fide Dispute**

A settlement of FLSA claims must "resolve a bona fide dispute" to merit court approval. *See Patel v. Barot*, 15 F. Supp. 3d 648, 654 (E.D. Va. 2014) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982)). The parties aver that such a dispute exists here. The Court agrees.

A bona fide dispute exists "when an employee makes a claim that he or she is entitled to overtime payment," *Lomascolo v. Parsons Brinckerhoff, Inc.*, 2009 WL 3094955, at *16 (E.D. Va. 2009), and the parties "demonstrate an actual disagreement" as to the allegations underlying the action. *Brockman*, 2018 WL 4956514, at *2. Here, Plaintiffs allege they were not paid regular overtime wages, in violation of the FLSA. *See* Compl. ¶¶ 1–3, 40–55; Settlement Agreement 2; Mem. Supp. 1. Defendants have "consistently denied and continue to deny those allegations." Mem. Supp. 7. In fact, the Settlement Agreement contains a provision wherein Defendants expressly deny any and all liability to Plaintiffs. *See* Settlement Agreement 2 ("Defendants deny, and continue to deny, each and all of the claims and contentions alleged in the [l]awsuit, and any and all allegations of wrongdoing, fault, liability, or damage of any kind.").

Under these circumstances, the Court has no issue finding that a bona fide dispute exists and that the Settlement Agreement constitutes a resolution of such dispute over FLSA provisions. *See, e.g., Lomascolo*, 2009 WL 3094955, at *16–17 (finding that a bona fide dispute exists where

the defendant denies the plaintiff's allegations).  The Court may therefore proceed to the substantive reasonableness inquiry.

**C. Reasonableness Factors**

The parties urge that a review of the relevant reasonableness factors "point[s] toward approval" of the proposed Settlement Agreement.  Mem. Supp. 7.  Keeping in mind that there exists "a strong presumption in favor of finding a settlement fair," *LaFleur v. Dollar Tree Stores, Inc.*, 189 F. Supp. 3d 588, 593 (E.D. Va. 2016), the Court agrees that the Settlement Agreement represents a "fair, adequate, and reasonable" resolution of the parties' dispute.

Courts must consider several factors in evaluating whether an FLSA settlement is fair and reasonable.  *Id.*  These factors include:  (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense, and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of plaintiffs' counsel; (5) the probability of plaintiffs' success on the merits; and (6) the amount of the settlement in relation to the potential recovery.  *Id.* (citing *Lomascolo*, 2009 WL 3094955, at *10 (citing *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173–74 (4th Cir.1975))); *Patel*, 15 F. Supp. 3d at 656 (citing *In re Dollar General Stores FLSA Litig.*, 2011 WL 3841652, at *2 (E.D.N.C. Aug. 23, 2011)).  The Court considers these factors below.

1. Extent of Discovery

Both ends of the discovery spectrum may favor approval of an FLSA collective action settlement.  That is, the completion of extensive formal discovery may weigh in favor of approval, just as the completion of very little formal discovery may weigh in favor of approval.  *Compare, e.g., Funkhouser v. City of Portsmouth*, 2015 WL 12765639, at *2 (E.D. Va. May 14, 2015) ("When discovery is largely completed, this factor weighs in favor of approving the settlement."),

with *Brockman v. Keystone Newport News, LLC*, 2018 WL 4956514, at *3 (E.D. Va. Oct. 12, 2018) ("[T]he parties agreed to hold discovery in abeyance due to their settlement negotiations. . . . Therefore, the proceedings are still in the preliminary stages, with much left to proceed should the parties decide to litigate. The [c]ourt finds that . . . it would conserve resources . . . to resolve this action through settlements.").

The parties here note that extensive informal discovery has taken place. *See* Mem. Supp. 7–8. Specifically, the parties relate that Defendants provided "data for all members of the Settlement Collective," and that Plaintiffs' counsel "used this data to hone a damages model." *Id.* at 7. The damages model, in turn, enabled "Plaintiffs to communicate their estimate of Defendants' maximum exposure." *Id.* at 7–8. As a result, the parties contend that they "had all the information they needed to evaluate the strength of their claims and defenses." *Id.* The parties conclude that "the substantial extent of this informal discovery . . . weighs in favor of approval." *Id.*

On review, the Court agrees that this factor favors approval of the Settlement Agreement. The parties appear to have engaged in significant, albeit informal, discovery. *See* Mem. Supp. 7–8. Decisions of other courts in this circuit suggest that is enough for this factor to favor approval. *See, e.g., Hatzey v. Divurgent, LLC*, 2018 WL 5624300, at *2 (Oct. 9, 2018) (approving an FLSA settlement where "substantial discovery" took place, even though the parties had reached a settlement agreement "at the beginning stages of litigation"); *Brockman*, 2018 WL 4956514, at *3 (noting that the litigation still being in the early stages favors settlement approval); *cf. Funkhouser*, 2015 WL 12765619, at *2 (noting that significant formal discovery favors settlement approval).

2. Stage of the Proceedings

While there is little *explicit* guidance on the topic, courts have elaborated on the sorts of circumstances that will cause the "stage of the proceedings" factor to favor approval of an FLSA

collective action settlement.  For instance, this factor will favor approval where the proceedings have advanced to a stage sufficient to permit the parties and their counsel to obtain and review evidence, evaluate their case, and engage in arms-length settlement negotiations.  *See Lomascolo*, 2009 WL 3094955, at *11; *Gorrell*, 2022 WL 3222003, at *3 (noting that this factor favored approval because the proceedings had "advanced far enough" to give the parties "an adequate appreciation of the merits of th[e] case to engage in settlement negotiations").  This factor will likewise favor approval where a settlement would allow the parties to avoid significant additional expenses that would accrue should the litigation continue.  *See Hatzey*, 2018 WL 5624300, at *2 (suggesting that this factor favored approval where "there would be significant additional expense" to the parties "were th[e] case to move forward to trial"); *Brockman*, 2018 WL 4956514, at *3 (noting that this factor favored approval because "this litigation is in its early stages and it would conserve resources of the parties and of this [c]ourt to resolve this action through settlements").

In view of these considerations, the Court finds that this factor also favors approval of the Settlement Agreement.  As already noted, the parties have engaged in extensive informal discovery, *see* Mem. Supp. 7–8, thus ensuring they have "an adequate appreciation of the merits of this case" such as to engage in settlement negotiations.  *Gorrell*, 2022 WL 3222003, at *3; *see Lomascolo*, 2009 WL 3094955, at *11.  At the same time, the proposed Settlement Agreement permits the parties to avoid "myriad issues that would have required litigation had the matter not settled." Mem. Supp. 8.  Namely, the parties would otherwise have had to seek class action treatment for their state law claims, and engage in "complex, expensive, and protracted litigation." *Id.*; *see also id.* ("Additional issues likely subject to protracted litigation may have included, for example, whether the Plaintiffs could prove that the Defendants were joint employers.").  Rather than engage in such an expensive, complex endeavor, "[t]his settlement provides significant

monetary relief to the members of the Settlement Collective now, rather than risking an uncertain and unpromised resolution of contested issues." *Id.*   For these reasons, the "stage of the proceedings" factor favors approval.

3. Absence of Fraud or Collusion

"[I]n the absence of any evidence to the contrary," there exists "a presumption that no fraud or collusion occurred between counsel." *Lomascolo*, 2009 WL 3094955, at *12 (citing *Camp v. Progressive Corp.*, 2004 WL 2149079, at *7–8 (E.D. La. Sept. 23, 2004)); *see Brockman*, 2018 WL 4956514, at *3 (citing *Lomascolo*, 2009 WL 3094955, at *12).

Here, the parties represent that they "negotiated this settlement at arms-length with complete data records to support the negotiated settlement." Mem. Supp. 8–9.  Moreover, "[e]ach eligible individual will decide whether to participate in the settlement, with the full benefit of the Settlement Agreement notice." *Id.* 9.  In short, there exists no evidence to rebut the presumption that no fraud or collusion has taken place.  This factor therefore favors approval of the Settlement Agreement.

4. Experience of Plaintiffs' Counsel

When Plaintiffs' counsel has significant experience with the relevant subject matter—here, federal and state employment law—this factor will favor approval.  *See Gagliastre v. George's Seafood Restaurant, L.P.*, 2019 WL 2288441, at *3 (E.D. Va. May 29, 2019); *Brockman*, 2018 WL 4956514, at *4.  Moreover, "the opinion and recommendation of experienced counsel should be given weight in evaluating the proposed settlement." *Flinn*, 528 F.2d at 1173; *Gagliastre*, 2019 WL 2288441, at *3 ("[C]ounsel has experience in federal court and employment litigation.  As a result, their opinion is entitled to weight.").

Plaintiffs' counsel are "well-respected lawyers with a breadth of experience in the fields of employment litigation and wage and hour law."  Mem. Supp. 9.  Plaintiffs' counsel have litigated numerous overtime cases against both public and private entities, and even provide a list of fourteen such cases.  *Id.*  Given that Plaintiffs' counsel has such extensive experience, *see* Mem. Supp. 9–10, and coupled with the fact that Plaintiffs' counsel avers that "the settlement is fair, reasonable, . . . adequate and resolves a bona fide dispute," Mem. Supp. 10, the Court finds that this factor favors approval.  *See Gagliastre*, 2019 WL 2288441, at *3–4; *Flinn*, 528 F.2d at 1173.

5. Probability of Plaintiffs' Success on the Merits

The probability of a plaintiff's success is "of the utmost importance" to the reasonableness inquiry.  *Gagliastre*, 2019 WL 2288441, at *4 (citing *In re The Mills Corp. Secs. Litig.*, 265 F.R.D. 246, 256 (E.D. Va. 2009)).  In turn, this factor weighs heavily in favor of finding that a settlement is fair when the evidence presented indicates that a plaintiff has "significant hurdles to overcome to affect any recover under the FLSA."  *Patel*, 15 F. Supp. 3d at 656.

The parties agree that "recovery in this matter is not guaranteed."  Mem. Supp. 10. "Plaintiffs face[] disputes over hours worked, the propriety of their allegations of joint employment, whether liquidated damages were appropriate, whether this action could proceed to trial on a collective action basis, and whether any of the claims asserted could proceed as a class action."  *Id.*  These uncertainties represent "significant hurdles to overcome to affect any recover under the FLSA."  *Patel*, 15 F. Supp. 3d at 656.  Therefore, this factor weighs heavily in favor of approving the Settlement Agreement.  *See id.*

6. Amount of Settlement in Relation to Potential Recovery

The Court first acknowledges the longstanding "public policy favoring voluntary resolution of disputes."  *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 881 (1994).

Against this backdrop, courts in the Fourth Circuit have found that settlements of sixty to eighty percent of the plaintiffs' potential recovery are sufficient for this factor to favor settlement. *See Brockman*, 2018 WL 4956514, at \*4. However, courts have also acknowledged that "sixty percent recovery" is not an absolute floor. *Id.* Instead, all that is required is that the total monetary amount of the settlement and the apportionment thereof are fair and reasonable. *See, e.g., id.*; *Lomascolo*, 2009 WL 3094955, at \*15–16.

The inclusion of any incentive or service awards is also relevant when considering this factor. Service awards are "'intended to compensate class representatives for work done on behalf of the class [and] to make up for financial or reputational risk undertaken in bringing the action.'" *Berry v. Schulman*, 807 F.3d 600, 613 (4th Cir. 2015) (quoting *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009)); *see Galloway v. Williams*, 2020 WL 7482191, at \*6 (E.D. Va. Dec. 18, 2020). Accordingly, "[t]rial courts often authorize service awards to class representatives for the time and effort they expended for the benefit of the class." *Galloway*, 2020 WL 7482191, at \*6; *see also Harris v. Wells Fargo Bank, N.A.*, 2019 WL 13254887, at \*9 (D. Ariz. May 13, 2019) ("A district court may award an incentive payment to named plaintiffs in a FLSA collective action to compensate them for work done on behalf of the class."); *Jones v. Agilysys, Inc.*, 2014 WL 2090034, at \*3 (N.D. Cal. May 19, 2014) ("Although incentive awards are not specifically authorized under the FLSA, they are generally authorized as a matter of the court's discretion.") (citing *In re Continental Ill. Secs. Litig.*, 962 F.2d 556, 571 (7th Cir. 1992)).

Beginning with the portion of the settlement fund designated for the entire Settlement Collective, the parties note that the "settlement compensates individuals who choose to participate . . . and eliminates the possibility of a loss on a motion for collective/class certification, loss on summary judgment, loss at trial, or loss on appeal." Mem. Supp. 10. As a result, the parties

14

contend that "this settlement brings value and certainty now, as opposed to years from now." *Id.* In terms of specifics, the relevant project giving rise to this action "lasted for only about one year, but participating individuals are eligible for an average settlement of over $1,400.00 per person, with many receiving significantly more." *Id.* This amount "represents over 70% of what is believed to be the 'best day' potential damages for the Putative Collective members." *Id.*

Turning to the Service Awards, Named Plaintiffs each "request a service award of $1,500.00, resulting in a total service award of $4,500.00." Mem. Supp. 11. The requested service award represents approximately 1.2% of the Gross Settlement Amount. *Id.* The parties contend that such award is "justified by the actions Named Plaintiffs undertook in the role of representative plaintiffs." *Id.* These actions included, *inter alia*, providing factual information to and consulting with counsel regarding litigation strategy and settlement. *Id.* They further assert that, "[i]n light of the Named Plaintiffs' efforts, the Settlement Collective as a whole receives the benefit of a $371,360.00 Gross Settlement Amount . . . . Th[e award] is a reasonable percentage [of the Gross Settlement Amonunt] in light of the actions undertaken by Named Plaintiffs in obtaining this settlement." *Id.*

Under these circumstances, the Court agrees that this factor weighs in favor of approval. The Settlement Agreement provides definite, immediate relief to the Plaintiffs, and does so to the tune of 70% of the Plaintiffs' "best day" damages—a percentage well within the range that courts in this circuit have previously approved. *See, e.g., Brockman*, 2018 WL 4956514, at *4; *Lomascolo*, 2009 WL 3094955, at *15–16. Further, nothing about the Service Awards alters this conclusion. Instead, it appears that such awards are indeed warranted because Named Plaintiffs (1) materially contributed to this litigation on behalf of the Settlement Collective; (2) that their contributions helped shape the eventual Settlement Agreement; and (3) that 1.2% of the Gross

Settlement Amount represents a reasonable portion thereof such as to compensate Named Plaintiffs for their contributions. *See Kirkpatrick v. Cardinal Innovations Healthcare Sols.*, 352 F. Supp. 3d 499, 507–08 (M.D.N.C. 2018) (holding that a service award of approximately 1.3% of the gross settlement fund was reasonable); *Leigh v. Bottling Grp., LLC*, 2012 WL 460468, at *7 (D. Md. Feb. 10, 2012) (approving a service award that was less than 1.5% of the total settlement fund in an FLSA collective action).

## D. Attorneys' Fees

Under the FLSA, the Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b). Because the language of the FLSA contemplates that "the wronged employee should receive his full wages . . . without incurring any expense for legal fees or costs," *Maddrix v. Dize*, 153 F.2d 274, 275–76 (4th Cir. 1946), the FLSA "requires judicial review of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009); *see Poulin v. Gen. Dynamics Shared Res., Inc.*, 2010 WL 1813497, at *1 (W.D. Va. May 5, 2010) (citing *Maddrix*, 153 F.2d at 275–76; *Silva*, 307 F. App'x at 351). Courts should, however, give some deference to the parties' voluntary agreement. *See Devine v. City of Hampton*, 2015 WL 10793424, at *3 (E.D. Va. Dec. 1, 2015).

Courts typically evaluate the reasonableness of attorneys' fees by comparing the requested amount to the lodestar amount, which is defined as a "reasonable hourly rate multiplied by hours reasonably expended." *Grissom v. Mills Corp.*, 549 F.3d 313, 320–21 (4th Cir. 2008); *Hatzey*, 2018 WL 5624300, at *4. However, "a fee award determined by percentage is preferred over the lodestar method in common fund cases" such as this. *Hatzey*, 2018 WL 5624300, at *4 (citing

*Savani v. URS Pro. Sols. LLC*, 121 F. Supp. 3d 564, 568 (D.S.C. 2015) ("Within this Circuit, the percentage-of-recovery approach is not only permitted, but is the preferred approach to determine attorney's fees.")); *Strang v. JHM Mortg. Secs. Ltd. P'ship*, 890 F. Supp. 499, 503 (E.D. Va. 1995) ("[T]he percentage method is more efficient and less burdensome than the traditional lodestar method, and offers a more reasonable measure of compensation for common fund cases."); *Galloway*, 2020 WL 7482191, at *5 ("[T]he favored method for calculating attorneys' fees in common fund cases is the percentage of the fund method."). This approach is referred to as the "percentage of the fund" or "percentage of recovery" method.

Courts may consider numerous factors to determine whether requested attorneys' fees are reasonable under the percentage of the fund method. *See Jones v. Dominion Res. Servs., Inc.*, 601 F. Supp. 2d 756, 760 (S.D.W. Va. 2009). These factors include: (1) the results obtained for the collective; (2) the quality, skill, and efficiency of the attorneys involved; (3) the complexity and duration of the case; (4) the risk of nonpayment; (5) awards in similar cases; (6) objections, and (7) public policy. *Id.* (citing *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 733 (3d Cir. 2001); *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000); *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974)); *see Goldenberg v. Marriott PLP Corp.*, 33 F. Supp. 2d 434, 438 (D. Md. 1998) (outlining similar factors to be used in determining whether a fee is reasonable under the percentage of the fund method); *see also Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir.1978) (adopting similar factors for consideration under the lodestar method). Importantly, there is no specific formula for analyzing these factors. *See Jones*, 601 F. Supp. 2d at 760 (citing *Muhammad v. Nat'l City Mortg., Inc.*, 2008 WL 5377783, at *8 (S.D.W. Va. Dec. 19, 2008) (quoting *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir.

2000))).  "Each case is different, and in certain cases, one factor may outweigh the rest."  *Gunter*, 223 F.3d at 195 n.1.

As outlined *supra*, the parties reached the negotiated Settlement Agreement after a "thorough investigation into the merits of the potential claims and defenses," Mem. Supp. 2–3; receipt and review of documents from the Named Plaintiffs, *id.* at 3; interviews with the Plaintiffs, *id.*; extensive informal discovery, *id.*; and several months of litigation.  *Id.*  The Settlement Agreement itself fixes attorneys' fees and costs at $100,000.00, representing 27% of the overall Settlement Fund.  Mem. Supp. 12–13; Settlement Agreement 5.  Named Plaintiffs were informed of and agreed to this figure.  *See* Mem. Supp. 12–13; Settlement Agreement 3–4, 10–12.  The fee award will likewise be disclosed to all other eligible individuals when they receive notice of the settlement.  *See* Settlement Agreement 3–4, 10–12, 23–24.  Notably, the proposed fee award is "well below the 40% interest" that Named Plaintiffs "agreed to in their representation agreements" with counsel.  Mem. Supp. 14 n.5.

Applying the percentage of the fund method, the Court finds that the proposed fee award is fair and reasonable.  While the Court need not tirelessly consider each factor outlined above, it will note those most relevant to its reasonableness finding.  *See Jones*, 601 F. Supp. 2d at 760; *Goldenberg*, 33 F. Supp. 2d at 438.

First, the results obtained for the collective represent 70% of their "best day" damages. Mem. Supp. 10–11.  Plaintiffs' counsel thus obtained a favorable outcome for the collective, particularly in light of the uncertainties Plaintiffs would have faced if the case had continued.  *See Jones*, 601 F. Supp. 2d at 761 (indicating that this factor favors approval where the size of the fund obtained is "significant"); *Brockman*, 2018 WL 4956514, at *4 (suggesting that settlements totaling between sixty and eight percent of potential damages are fair); *see also McKnight v. Cir.*

*City Stores, Inc.*, 14 F. App'x 147, 149 (4th Cir. 2001) (noting that "the most critical factor in calculating a reasonable fee award is the degree of success obtained"). Next, Plaintiffs' counsel are experienced in FLSA collective action litigation, *see supra* Part IV.C.4, and worked efficiently on this case, bringing it to a proposed resolution within several months of filing. *See* Mem. Supp. 2–3; *Jones* 601 F. Supp. 2d at 10–11. Relatedly, while this matter was not overly drawn out, it did involve consideration and analysis of complex issues. *See* Mem. Supp. 2–3, 8, 10. Plaintiffs' counsel also conducted a thorough investigation of the merits of this case *before* filing, suggesting that the duration of this matter extends well beyond its formal start date. Mem. Supp. 2–3.

Finally, the fee award here is comparable to those earned in similar FLSA cases. *See Winnigear v. City of Norfolk*, 2014 WL 3500996, at *6 (E.D. Va. July 14, 2014) (noting that courts "routinely approve percentage recoveries in FLSA cases approaching forty percent of the total recovery"); *Gagliastre*, 2019 WL 2288441, at *5 (stating that fees awarded under the percentage of recovery method in settlements under $100 million "have ranged from 15% to 40%"); *Devine*, 2015 WL 10793424, at *3 (approving of an attorneys' fee award in an FLSA case totaling 33.98% of the settlement amount); *Kirkpatrick*, 352 F. Supp. 3d at 505 (M.D.N.C. 2018) (holding that a 33.39% award is "within the range of percentages that have been approved in other cases" in the Fourth Circuit).[7]

For the foregoing reasons, the Court finds that the agreed-upon attorneys' fees award—$100,000.00, or 27% of the Gross Settlement Amount—is fair and reasonable.[8]

---

[7] While the Court was not provided with "a complete breakdown of the fees" in this matter, it is nevertheless satisfied that the fee award is reasonable based on its analysis of the relevant factors. *See Patel*, 15 F. Supp. 3d at 657 (finding that the attorneys' fees sought were fair and reasonable because, "[w]hile the Court was not provided a complete breakdown of the fees," the award was nevertheless "consistent with other cases in the district" (citing *Walker v. Dovetails, Inc.*, 2010 WL 5878336, at *3 (E.D. Va. Nov. 30, 2010)).

[8] The Court need not do a lodestar cross-check to ensure the reasonableness of the proposed fee award. *See Strang*, 890 F. Supp. 499, 502–03 (declining to utilize the lodestar method in a common fund case, because many "courts . . . have concluded that the percentage method is more efficient and less burdensome than the traditional lodestar method, and offers a more reasonable measure of compensation for common fund cases"); *Gagliastre*, 2019

### E. Release and Notice Provisions

Lastly, the Court considers the notice and release provisions of the Settlement Agreement. The parties assert that these provisions are satisfactory. The Court agrees.

29 U.S.C. § 216(b) governs the type of FLSA collective action at issue here. Importantly, 29 U.S.C. § 216(b) does not contain any notice requirements: "[S]ection 216(b) does not require a district court to notify potential claimants about a proposed settlement." *Haskett v. Uber Techs., Inc.*, 780 F. App'x 25, 27 (4th Cir. 2019) (per curiam) (citing *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1112 (9th Cir. 2018) ("The statutory requirements of a collective action are independent of, and unrelated to, the requirements for class action under Rule 23.") (internal quotation marks omitted); *Behr v. Drake Hotel*, 586 F. Supp. 427, 430 (N.D. Ill. 1984) ("29 U.S.C. § 216(b) contains no provision which prohibits or permits the sending of notice to potential claimants.")).

Nevertheless, "[p]art of the [c]ourt's review of FLSA settlements is 'to police unequal bargaining power between employees and employers.'" *Brockman*, 2018 WL 4956514, at *5 (quoting *Lopez v. Nights of Cabiria*, 96 F. Supp. 3d 170, 175 (S.D.N.Y. 2015)). District courts must therefore scrutinize the scope of any liability releases that are present in a settlement

WL 2288441, at *4 (indicating that a lodestar cross-check was unnecessary); *Devine*, 2015 WL 10793424, at *3 (noting that courts *may* use lodestar principles to cross-check for reasonableness, but declining to do so); *accord Arledge v. Domino's Pizza, Inc.*, 2018 WL 5023950, at *5 (S.D. Ohio Oct. 17, 2018) (noting that a lodestar cross-check was "unnecessary").

In any event, the Court finds that the lodestar—$50,000.00—and its accompanying multiplier—two—are further indicia of the reasonableness of the proposed fee award. Courts in this circuit have consistently held that multipliers in this range (and higher) are reasonable. *See, e.g., Kruger v. Novant Health, Inc.*, 2016 WL 6769066, at *5 (M.D.N.C. Sept. 29, 2016) (approving fees at "3.69 times the lodestar. This multiplier is within the range of reasonableness, as courts have generally held that lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorney's fee. . . . Courts both within this Circuit and across the country routinely approve fee awards with higher lodestar multipliers.") (internal quotes omitted) (collecting cases); *Jones*, 601 F. Supp. 2d at 766 (S.D. W. Va. 2009) (approving a lodestar multiplier between 3.4 and 4.3 because "[c]ourts have generally held that lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorneys' fee"); *In re Genworth Fin. Secs. Litig.*, 210 F. Supp. 3d 837, 845 (E.D. Va. 2016) (approving lodestar multiplier of 1.97 as "eminently reasonable," and noting that "[d]istrict courts within the Fourth Circuit have regularly approved attorneys' fees awards with 2–3 times lodestar multipliers.") (collecting cases).

agreement.  *Id.*  When liability releases in FLSA agreements reach beyond the scope of the action and release the employer from liability beyond the FLSA, "the parties [must] show whether [the p]laintiff[s] ha[ve] been 'independent[ly] compensated for the broad release of claims unrelated to any dispute regarding FLSA coverage or wages due,' such that the settlement is reasonable." *Hendrix v. Mobilelink Va., LLC*, 2017 WL 2438067, at *3 (E.D. Va. May 26, 2017) (quoting *McKeen-Chaplin v. Franklin Am. Mortg. Co.*, 2012 WL 6629608, at *5 (N.D. Cal. Dec. 19, 2012)). Overbroad liability releases in FLSA agreements will be deemed unreasonable.  *See id.*

The parties face no notice or release-related issues here.  As outlined above, exacting notice is not required in FLSA collective action settlements.  *See Haskett*, 780 F. App'x at 27.  In any event, the Settlement Agreement and its notice provisions ensure that members of the Settlement Collective will receive notice of the terms of settlement, the relief available to the Settlement Collective, and the procedures for and consequences of participating in the settlement.  Settlement Agreement 2–7, 23–24.  The Settlement Agreement and notice also describe the fees and costs that Plaintiffs' counsel is seeking.  *Id.* at 5.  Thus, to the extent any notice requirement can be read into the FLSA, the steps taken by Plaintiffs' counsel would be sufficient to meet such requirement.

Additionally, the release of liabilities provided by the Settlement Agreement does not impermissibly reach beyond the scope of this action.  *See Brockman*, 2018 WL 4956514, at *5. The release provision is instead narrowly tailored to release Defendants "from any all known or unknown claims, causes of action, liability, and damages," relating to "the payment or non-payment of wages, overtime wages, and failure to timely pay all earned wages."  Settlement Agreement 5.  In other words, the release pertains only to Defendant's potential liability under the FLSA and related state law claims.  Moreover, the release applies only to those individuals who sign their copy of the Settlement Agreement and release.  *Id.* at 5–6.  Such tailoring is eminently

fair and reasonable.  *See, e.g., Brockman*, 2018 WL 4956514, at *5 ("Given that the revised agreements only waive the FLSA and a related state law claim, the [c]ourt finds that these releases are fair and reasonable."); *Hendrix*, 2017 WL 2438067, at *3 (suggesting that a release provision will be fair and reasonable where it tracks the allegations and claims raised in the complaint); *Saman v. LDBP, Inc.*, 2013 WL 2949047, at *5 (D. Md. June 13, 2013) (same).

In sum, nothing about the notice or release provisions alters the Court's conclusion that the Settlement Agreement represents a fair and reasonable resolution of the parties' bona fide dispute.

## V. CONCLUSION

For the foregoing reasons, the parties' Joint Motion to Approve Settlement (ECF No. 36) will be granted.

An appropriate Order shall issue.

_____ /s/ _____

Roderick C. Young
United States District Judge

Richmond, Virginia
Date: <u>April 2, 2024</u>